**JONES TRIAL ATTORNEYS**
SEAN M. JONES, ESQ./LL.M.
Wells Fargo Plaza, 20th Floor
401 B Street, Suite 2010
San Diego, California 92101
T: (619) 732-6377
F: (619) 730-7111
E: Sean@Jonestrialattorneys.com

Attorneys for Plaintiff, ENVIROTECH VEHICLES, INC., a Delaware corporation.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIROTECH VEHICLES, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> MALONE BAILEY, a Texas limited liability partnership, STEVEN VERTUCCI, an individual; and DOES 1 through 25, inclusive, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR:** <br> 1. **Breach of Contract** <br> 2. **Common Law Fraud** <br> 3. **Negligent Misrepresentation** <br> 4. **Professional Negligence** <br> 5. **Breach of Fiduciary Duty** <br> 6. **Promissory Estoppel/Detrimental Reliance** <br> 7. **Unjust Enrichment** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff EVIROTECH VEHICLES, INC., complains and alleges against Defendants MALONE BAILEY, LLP, a Texas limited liability partnership, STEVEN VERTUCCI, an individual, and DOES 1 through 25 as follows:

\\\

1
COMPLAINT

**PARTIES**

1.      Plaintiff ENVIROTECH VEHICLES, INC. ("ENVIROTECH") is a publicly traded Delaware corporation with its principal place of business located in Corona, California.

2.      Defendant MALONE BAILEY, LLP ("MALONE") is a Texas limited liability partnership with its principal place of business located in Houston, Texas.

3.      Defendant STEVEN VERTUCCI ("VERTUCCI") is an individual and a resident of Houston, Texas.

4.      Defendants named herein by fictitious names DOES 1 through 25, inclusive, are persons, individuals, corporations, partnerships, associations, or otherwise. The true names and identities and capacities of each fictitiously named defendant are unknown to ENVIROTECH at this time. Leave of Court will be requested to amend this complaint to show their true names and capacities when they have been ascertained.

5.      MALONE, VERTUCCI, and DOES 1-25 are collectively referred to as "DEFENDANTS" herein.

6.      At all relevant times, each Defendant was an agent, servant, employee, partner, co-conspirator, and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, partnership, and/or joint venture.

2
COMPLAINT

7.     Actions taken, or omissions made, by Defendants' employees or agents in the course of their employment or agency are actions or omissions of Defendants for the purposes of this Complaint.

**JURISDICTION AND VENUE**

8.     Exercise of jurisdiction over DEFENDANTS is reasonable and proper because each of them have purposefully availed themselves of the laws and benefits of doing business in the State of California, and a substantial portion of the events giving rise to ENVIROTECH's claims occurred in this district.

9.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a). ENVIROTECH is a Delaware corporation with its principal place of business in Corona, California. MALONE is a Texas limited liability partnership with its principal place of business in Houston, Texas. VERTUCCI is a citizen of Houston, Texas.  Each Defendant is of a different citizenship than Plaintiff and the amount in controversy exceeds $500,000,000 and therefore, is more than the minimum of $75,000 required for diversity jurisdiction.

10.     Venue in this district is proper under 28 U.S.C. §1391(b) because a substantial part of the events and omissions underlying this lawsuit occurred in this district.

\\\

\\\

3
COMPLAINT

## BACKGROUND

11.    ENVIROTECH is a provider of new zero-emission, purpose-built electric vehicles focused on reducing the total cost of vehicle ownership and helping fleet operators unlock the benefits of green technology. ENVIROTECH serves commercial and last-mile fleets, school districts, public and private transportation service companies and colleges and universities to meet the increasing demand for heavy duty electric vehicles. ENVIROTECH's vehicles address the challenges of traditional fuel price cost instability and local, state and federal environmental regulatory compliance.

12.    According to its website, MALONE is a full-service public accounting firm headquartered in Houston, Texas with offices in Beijing and Shenzhen. MALONE provides audit, tax and consulting services to public and private companies from a variety of industry lines. MALONE claims to have the technical expertise to understand the accounting and reporting issues while maintaining a cost competitive fee structure. MALONE further claims to be efficient, cost effective and transparent with the delivery of its services and professional fees.

13.    According to his profile on MALONE's website, VERTUCCI is an audit partner at MALONE with twenty years of experience with audits of commercial enterprises with an emphasis on public companies in industries such as biotechnology, high tech, oil and gas construction, manufacturing, telecommunications, real estate, and other service industries. VERTUCCI's profile states that his strengths include quality

control, leadership, attention to detail, consistency, thoroughness, and business practical solutions.

14.    MALONE has been the independent registered public accounting firm of ENVIROTECH since 2020, and VERTUCCI has been the Partner overseeing ENVIROTECH's reviews and audits.

15.    Each year DEFENDANTS entered into an engagement agreement with ENVIROTECH where it agreed to audit the consolidated financial statements of ENVIROTECH, which comprise the consolidated balance sheet as of the given fiscal year, and the related statements of income, changes in stockholders' equity, and cash follows for the year ended, and the related notes to the consolidated financial statements, all of which are included in the annual report (Form10-K) to be filed by ENVIROTECH.

16.    Under these agreements, DEFENDANTS promised to have the audit and Form 10-K for fiscal year ended December 31, 2022 completed by August 14, 2023 so that ENVIROTECH could be in compliance with the deadline set by NASDAQ and not risk being delisted.

17.    In the engagement agreements, DEFENDANTS promised to conduct its audit in accordance with the standards of the Public Company Accounting Oversight Board ("PCAOB").

18.    The engagement agreement further outlined the procedures to be followed by DEFENDANTS in their audit. Specifically, the procedures included, among other

things, (a) tests of documentary evidence that support the transactions recorded in the accounts; (b) tests of the physical existence of inventories; (c) direct confirmation of cash, investments, and certain other assets and liabilities by correspondence with customers, creditors, and financial institutions; and (d) obtaining an understanding of the entity and its environment, including its internal control.

19.    In performing the audit, DEFENDANTS also promise to communicate with the audit committee and management of ENVIROTECH regarding, but not limited to, any findings, significant issues, changes in planned audit strategy, the timing of the audit, and any issues with management.

20.    Despite these promises, DEFENDANTS repeatedly failed to communicate with ENVIROTECH regarding these things and were consistently evasive in responding to ENVIROTECH's questions regarding the status of the audit for the December 31, 2022 fiscal year.

21.    Around November 2022, while preparing the Form 10-K for fiscal year ended December 31, 2022, ENVIROTECH discovered misstatements with regard to the recognition of sales revenue and related costs of sale during the periods ended March 31, 2022, June 30, 2022 and September 30, 2022. ENVIROTECH identified vehicle sales transactions where sales revenue and related cost of sales were incorrectly recognized at the time of approval of customer purchase incentives by certain government-sponsored electric vehicle incentive programs. ENVIROTECH determined that this recognition did

6
COMPLAINT

not conform with Accounting Standards Codification Topic 606, *Revenue from Contracts with Customers,* and that the revenue should have been recognized upon delivery of the vehicles to the customer. The result of this revenue recognition error was an overstatement in the reported amount of sales, cost of sales, gross profit and accounts receivable, and understatement in the reported amounts of inventory and net loss for the periods ended March 31, 2022, June 30, 2022, and September 30, 2022.  To the extent that vehicles were delivered in a subsequent period, ENVIROTECH will recognize the revenue in the period of delivery.

22.    DEFENDANTS were the auditors during the period that the accounting errors were made and did not identify the errors during their review of the consolidated financial statements or in preparation of the Forms 10-Q for the affected quarters.

23.    Upon discovering the accounting error, it was determined that ENVIROTECH needed to amend Forms 10-Q for the quarterly periods ended March 31, 2022, June 30, 2022 and September 30, 2022 to correct the unaudited interim consolidated financial statements for the misstatements identified above.

24.    To correct and address the accounting errors, ENVIROTECH notified DEFENDANTS of the errors and sought guidance on amending the Forms 10-Q and the need to file ENVIROTECH's Form 10-K late.

25.    Upon learning of the accounting errors from ENVIROTECH, VERTUCCI immediately decided, without conducting any investigation or talking to management of

COMPLAINT

ENVIROTECH, that the accounting errors were the result of fraud by the management of ENVIROTECH. VERTUCCI made these allegations to ENVIROTECH's audit committee and to ENVIROTECH's CEO. ENVIROTECH adamantly denied the allegation that there had been any fraud by management and provided an explanation as to why the accounting errors had occurred and offered to provide documentation to support the same. VERTUCCI would not review the documentation and went so far as to erroneously claim that the supporting documentation had been signed by an employee of ENVIROTECH. A simple investigation into the payroll records of ENVIROTECH and the documents relating to the sale of the vehicles at issue would have shown VERTUCCI that his assertions were incorrect. However, VERTUCCI refused to do his duty to investigate or rescind his allegation.

26.    As a result of VERTUCCI's fraud allegation, ENVIROTECH's Audit Committee hired K&L Gates to conduct a review of the events leading to the accounting errors. This review was completed in July 2023 and the findings were that the accounting errors were not the result of any intent to deceive or deliberate misconduct by ENVIROTECH, i.e., there was no fraud committed by management.

27.    DEFENDANTS attended a meeting with K&L Gates in which K&L Gates presented a PowerPoint presentation on its findings. DEFENDANTS originally requested a written copy of K&L Gates' findings, but, after the report was prepared at a

8
COMPLAINT

significant expense to ENVIROTECH, DEFENDANTS refused to accept the report without any explanation as to why.

28.    At some point during the investigation into VERTUCCI's fraud claim, MALONE determined that the matter needed to be reviewed by MALONE's Continuation Committee to determine whether MALONE would continue to be ENVIROTECH's independent registered public accounting firm. The referral to this Continuation Committee was not disclosed to ENVIROTECH for months, so ENVIROTECH was unaware that MALONE was considering resigning, a fact that was vital for ENVIROTECH to know given the NASDAQ deadline and threat of delisting hanging over ENVIROTECH.

29.    It was not until ENVIROTECH had been waiting for several months for the Continuation Committee to reach a decision and for DEFENDANTS to finish the review that ENVIROTECH learned that the one Continuation Committee holdout member was an individual who was a Chinese national and a resident of China. It was disclosed to ENVIRTACH by VERTUCCI that this individual was not responding to telephone calls or messages.  It became apparent that this committee member was refusing to fulfill her obligations in an attempt to harm ENVIROTECH.

30.    Despite K&L Gates' findings, the Continuation Committee of MALONE was still unable to come to a unanimous decision on whether to proceed with its relationship with ENVIROTECH due to that same committee member. In fact, this

member was refusing to review the K&L Gates report and, without any basis, ultimately decided that she was unable to trust management-in spite of K&L Gates' report finding no wrongdoing by management-and refused to vote in the affirmative.

31.    While waiting on the Continuation Committee to reach a decision, ENVIROTECH was in constant communication with DEFENDANTS and DEFENDANTS continued to request additional financial documentation, as though the audit was still in progress and would be timely completed.  In fact, up to a few hours before DEFENDANTS notified ENVIROTECH that it was resigning, ENVIROTECH was still providing additional documentation to DEFENDANTS. At no point in time did DEFENDANTS ever give ENVIROTECH notice that the audit might not be completed on time or that DEFENDANTS were considering resigning. DEFENDANTS knew that these facts were vital to ENVIROTECH and deliberately withheld the information to do the most harm.

32.    In addition, despite the contractual promise to keep ENVIROTECH informed, DEFENDANTS failed to communicate with management of ENVIROTECH regarding the accounting errors that were discovered. In fact, DEFENDANTS refused to talk to the CEO of ENVIROTECH and deliberately held meetings with the audit committee without notifying the interim CFO, but DEFENDANTS did include in the meetings ENVIROTECH's internal accountant, who was not a member of management. Moreover, DEFENDANTS failed to notify ENVIROTECH that it was considering

resigning or that it would not be able to satisfy the August 14, 2023 deadline for the audit to be completed and the Form 10-K to be filed. Both of these communication failures resulted in harm to ENVIROTECH, and knowledge of these facts were vital to ENVIROTECH being able to satisfy its deadlines. A fact that was known to DEFENDANTS.

33.    On August 8, 2023, less than one week before the deadline to have the Form 10-K for the fiscal year ended December 31, 2022 filed, DEFENDANTS informed ENVIROTECH that it was resigning as ENVIROTECH'S independent registered public accounting firm. This late notice resignation put ENVIROTECH in a severe time crisis because the deadline to file the Form 10-K was August 14, 2023 and ENVIROTECH had no auditor to complete the audit.

34.    On August 11, 2023, ENVIROTECH filed a Form 8-K disclosing that MALONE had resigned and disclosed that MALONE had not completed the audit procedures required for the Form 10-K for the fiscal year ended December 31, 2022 or provide any report on the financial statements for the same fiscal year. The Form 8-K also stated that the review conducted by legal counsel relating to the accounting error previously identified found that the accounting errors were not the result of any intent to deceive or deliberate misconduct on the part of ENVIROTECH. MALONE was given the opportunity to review the Form 8-K and the disclosures and provide a statement

11
COMPLAINT

regarding whether it agreed with the statements made by ENVIROTECH in the filing. MALONE responded that it agreed with the statements in the disclosure.

35.   ENVIROTECH was able to retain Barton, CPA to conduct the audit and review of financial statements necessary for ENVIROTECH to be able to file the 2022 Form 10-K.  In addition, ENVIROTECH was able to obtain an extension until October 15, 2023 to have the Form filed before it is subject to delisting by NASDAQ.

36.   As the result of the late filing and MALONE's resignation, ENVIROTECH has suffered damages to its reputation; financial losses relating to the decline in the price of ENVIROTECH's shares; its shareholder's faith that ENVIROTECH is financially stable; loss of lucrative business opportunities and the ability to raise additional capital; financial losses relating to significant amounts of money paid to MALONE for work that it never intended to complete; legal fees relating to the investigation into allegations raised by MALONE; and fees for hiring a new Certified Public Accounting firm to complete the unfinished work.

## FIRST CAUSE OF ACTION

## BREACH OF WRITTEN AGREEMENT

### (Against all Defendants and DOES 1-25)

36.   ENVIROTECH incorporates each of the foregoing paragraphs as if set forth fully herein.

COMPLAINT

37.     ENVIROTECH and MALONE entered into an engagement agreement where it was agreed that DEFENDANTS would provide auditing services for ENVIROTECH. Such services included, but were not limited to the audit of the consolidated financial statements of ENVIROTECH, which comprise the consolidated balance sheet as of the given fiscal year, and the related statements of income, changes in stockholders' equity, and cash follows for the year ended, and the related notes to the consolidated financial statements, all of which are included in the annual report (Form10-K) to be filed by ENVIROTECH.

38.     ENVIROTECH has performed all conditions, covenants, terms and obligations under said agreement. Specifically, ENVIROTECH made all financial records and relevant information available to DEFENDANTS so that the audit could be conducted and engaged K&L Gates to conduct an investigation into the accounting errors to ensure that no fraud by ENVIROTECH had occurred.

39.     MALONE breached said agreement by failing to perform the audit, failing to complete the Form 10-K by August 14, 2023, withdrawing from representation less than a week before the Form 10-K was due, leaving ENVIROTECH without audited financial statements, and not communicating with ENVIROTECH regarding the actual status of the audit and DEFENDANT's intent to resign without warning.

40.     As a result of MALONE's breach, ENVIROTECH suffered financial damages in the amount of no less than $310,000.

13
COMPLAINT

## SECOND CAUSE OF ACTION

## COMMON LAW FRAUD

### (Against all Defendants and DOES 1-25)

41.     ENVIROTECH incorporates each of the foregoing paragraphs as if set forth fully herein.

42.     DEFENDANTS made fraudulent statements to ENVIROTECH regarding the fact that it would timely complete its audit and would file the Form 10-K for fiscal year ending December 31, 2022 on or before the August 14, 2023 deadline.

43.     DEFENDANTS knew or should have known that these representations were false and that ENVIROTECH would rely on the statements.

44.     ENVIROTECH reasonably relied on DEFENDANTS' representations, and as a result ENVIROTECH was left without an audit report or the ability to file its Form 10-K by the deadline when DEFENDANTS abruptly resigned without notice and after reiterating the fraudulent statements to ENVIROTECH shortly before resigning.

45.     As a result of DEFENDANTS' misrepresentations, ENVIROTECH suffered damages in the form of financial and reputational harm, and other general damages, special damages, punitive damages and attorneys' fees and costs subject to proof at trial.

\\\

\\\

14
COMPLAINT

## THIRD CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (Against all Defendants and DOES 1-25)

46.    ENVIROTECH incorporates each of the foregoing paragraphs as if set forth fully herein.

47.    DEFENDANTS represented to ENVIROTECH that it would have the audit and the Form 10-K for fiscal year ended December 31, 2022 completed and filed no later than August 14, 2023, the deadline set by NASDAQ, in order to prevent ENVIROTECH from being delisted

48.    DEFENDANTS knew or should have known these statements were false and that ENVIROTECH would rely on the statements.

49.    DEFENDANTS knew that this representation was not true at the time it was made, and when it was repeated over the time period of November 2022 through August 8, 2023.

50.    DEFENDANTS intended that ENVIROTECH rely on this representation.

51.    ENVIROTECH reasonably relied on DEFENDANTS' representation.

52.    As a direct and proximate result of its reasonable reliance on DEFENDANTS' negligent misrepresentations, ENVIROTECH has suffered damages in the form of the inability to timely file its Form 10-K in accordance with NASDAQ's

15
COMPLAINT

deadline, exposure to the threat of being delisted, general damages, special damages, punitive damages, and attorneys' fees and costs subject to proof at trial.

## FOURTH CAUSE OF ACTION

## PROFESSIONAL NEGLIGENCE

## (Against all Defendants and DOES 1-25)

53.    ENVIROTECH incorporates each of the foregoing paragraphs as if set forth fully herein;

54.    DEFENDANTS were negligent in their handling of ENVIROTECH's audit and review because it failed to comply with the standards of the Public Company Accounting Oversight Board, failed to communicate with ENVIROTECH and resigned just days before a known deadline without completing the audit without any basis and subjecting ENVIROTECH to harm that could be detrimental to its ability to continue operations.

55.    As a result of DEFENDANTS' negligence, ENVIROTECH was significantly harmed, the full extent of which is not able to be determined at this point.

56.    DEFENDANTS' negligence was a substantial factor in causing ENVIROTECH's harm because it was aware of the deadline that ENVIROTECH was subject to, and it resigned without warning or good cause immediately before the deadline. Thereby leaving ENVIROTECH exposed to delisting by NASDAQ and other financial consequences.

COMPLAINT

57. As a direct and proximate result of DEFENDANTS' professional negligence, ENVIROTECH has suffered damages in the form of general damages, special damages, punitive damages, and attorneys' fees and costs subject to proof at trial.

## FIFTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

## (Against all Defendants and DOES 1-25)

58. ENVIROTECH incorporates each of the foregoing paragraphs as if set forth fully herein.

59. DEFENDANTS were ENVIROTECH's independent registered public accounting firm.

60. As such, DEFENDANTS owed ENVIROTECH a duty to act as a reasonably careful public accounting firm would have acted under the same or similar circumstances.

61. DEFENDANTS failed to act with the requisite level of care when it made accusations of fraud against management without investigation into the facts or any communication with management and when it abruptly resigned right before a vital deadline without any notice or discussion with ENVIROTECH.

62. As a result, ENVIROTECH was harmed, the extent of which cannot be readily determined as of this date.

17

COMPLAINT

63.    DEFENDANTS' conduct was a substantial factor in causing ENVIROTECH's harm.

64.    As a direct and proximate result of DEFENDANTS' breach of its fiduciary duty, ENVIROTECH has suffered damages in the form of general damages, special damages, punitive damages, and attorneys' fees and costs subject to proof at trial.

**SIXTH CAUSE OF ACTION**

**PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE**

**(Against all Defendants and DOES 1-25)**

65.    ENVIROTECH incorporates each of the foregoing paragraphs as if set forth fully herein.

66.    DEFENDANTS represented to ENVIROTECH that it would have the audit and the Form 10-K for fiscal year ended December 31, 2022 completed and filed no later than August 14, 2023, the deadline set by NASDAQ, in order to prevent ENVIROTECH from being delisted

67.    DEFENDANTS knew or should have known these statements were false and that ENVIROTECH would rely on the statements.

68.    DEFENDANTS knew that this representation was not true at the time it was made, and when it was repeated over the time-period of November 2022 through August 8, 2023.

69.    DEFENDANTS intended that ENVIROTECH rely on this representation.

18
COMPLAINT

70.    ENVIROTECH reasonably relied on DEFENDANTS' representation.

71.    As a direct and proximate result of its reasonable reliance on DEFENDANTS' negligent misrepresentations, ENVIROTECH has suffered damages in the form of the inability to timely file its Form 10-K in accordance with NASDAQ's deadline, exposure to the threat of being delisted, general damages, special damages, punitive damages, and attorneys' fees and costs subject to proof at trial.

## SEVENTH CAUSE OF ACTION

## UNJUST ENRICHMENT

### (Against all Defendants and DOES 1-25)

72.    ENVIROTECH incorporates each of the foregoing paragraphs as if set forth fully herein.

73.    DEFENDANTS received a benefit from ENVIROTECH in the form of fees for auditing services that were not completed.

74.    MALONE unjustly retained the benefit of said payments without providing ENVIROTECH with the services it had contracted for, specifically the completion of the audit and filing of the Form 10-K for fiscal year ended December 31, 2022.

75.    As a result, MALONE received no less than $150,000 in fees that were unearned.

\\\

\\\

19
COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ENVIROTECH respectfully prays for this Court to enter an Order granting the following relief on the claims against DEFENDANTS:

1. For general, specific, economic and consequential damages in an amount to be proven at trial;

2. For restitution, according to proof;

3. For an award of damages equal to the financial loss suffered by ENVIROTECH as a result of DEFENDANTS' conduct, including interest;

4. For exemplary and punitive damages;

5. For reasonable attorney fees and costs; and

6. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

ENVIROTECH hereby demands a jury trial.

RESPECTFULLY SUBMITTED,

Dated: April 6, 2026                                    **JONES TRIAL ATTORNEYS**


 _/s/ Sean M. Jones_____
SEAN M. JONES, ESQ./LL.M.
Attorney for Plaintiff,
ENVIROTECH VEHICLES, INC.

20
COMPLAINT